IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JIMMIE E. BURNS                                                                 PLAINTIFF

vs.                                      Civil No. 5:06-cv-05087

MICHAEL J. ASTRUE[1]                                                            DEFENDANT
Commissioner, Social Security Administration


**AMENDED REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Jimmie E. Burns ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social

Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration denying his application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of

the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Jimm L.

Hendren referred this case to the Honorable Barry A. Bryant for the purpose of making a report and

recommendation.   The Court, having reviewed the entire transcript and relevant briefing,

recommends that the ALJ's determination be **AFFIRMED.**

1. **Background:**

The applications for DIB and SSI now before this Court were protectively filed on June

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

26, 2004.  (Tr. 10, 64).[2]  The Plaintiff alleged in this application an onset date of December 15,

2001.  (Tr. 10, 64).  The Plaintiff, however, amended this date at the hearing and alleged an onset

date of August 31, 2002.  (Tr. 10, 342-343).  These claims were initially denied on July 26, 2004

(DIB) and September 7, 2004 (SSI).  (Tr. 10, 27-30, 38-42).  These claims were also denied upon

reconsideration on April 21, 2005.  (Tr. 45-47).  An administrative hearing was held on December

1, 2005 in Fayetteville, Arkansas.  (Tr. 10, 329).  At this hearing, the Plaintiff was present and was

represented by Ellen Miller, a non-attorney representative.  (Tr. 10, 329).  The Plaintiff's friend,

Mary Hernandez, also testified at this hearing.  (Tr. 329).  The Plaintiff was fifty-eight (58) years

old at the time of the hearing.  (Tr. 64).

On March 3, 2006, the Administrative Law Judge ("ALJ") issued a written opinion.  (Tr.

10-17).  The ALJ concluded the Plaintiff had not engaged in substantial gainful activity at any time

since the onset date.  (Tr. 12).  The ALJ also determined the Plaintiff suffered from (1) cerebral

vascular disease, (2) chronic pain of the lower back, left shoulder, and arms, and (3) a mild brain

aneurysm.  (Tr. 12).  The ALJ also noted the Plaintiff had, prior to the amended onset date,

suffered from symptoms related to a seizure disorder.  (Tr. 13).  The ALJ noted that the diagnostic

impression for these symptoms was an "alcohol withdrawal seizure."  *Id.*  The ALJ also concluded

these impairments were severe but did not meet or medically equal one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  (Tr. 14).  The ALJ noted that the listed

impairments for the musculoskeletal, cardiovascular, and neurological systems were considered

in making this determination.  *Id.*

---

[2] The transcript pages for this case are referenced by the designation "Tr."   The document numbers for this case are referenced by the designation "Dkt. No."

The ALJ evaluated the Plaintiff's Residual Functional Capacity ("RFC") and concluded that the claimant was able to perform "medium exertion level activities." (Tr. 14). The ALJ also applied *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984), and found that the claimant's statements concerning the intensity, duration, and limiting effects of the disabling symptoms were not "entirely credible." (Tr. 14-15). The ALJ examined and considered the testimony of vocational expert ("VE") Patty Kent. (Tr. 329). The VE noted that the Plaintiff's Past Relevant Work ("PRW") included jobs as a short order cook and as a worker on a clean-up crew. (Tr. 352). The ALJ determined this work to be light exertional work, and the VE testified that, based upon his RFC, the Plaintiff was still able to perform this PRW. (Tr. 17, 349-352).

On April 12, 2006, the Appeals Council declined to review this decision. (Tr. 2). Subsequently, Plaintiff filed this action on May 12, 2006. (Dkt. No. 1). The Plaintiff and the Defendant have both filed appeal briefs. (Tr. 7, 9). In his brief, the Plaintiff alleges that he is suffering from short-term memory problems, injuries to his back, arms, shoulders, pain, and a brain aneurysm. *Id.* at 2. Furthermore, the Plaintiff alleges he cannot read or write anything except his name, and he is illiterate. *Id.* This case was referred to the undersigned on February 20, 2007. This case is ready for decision.

## 2. **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir.

3

2001).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently.  *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998);  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.  *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work

4

experience); (4) whether the claimant has the RFC to perform his or her relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

3. <u>Discussion:</u>

The ALJ concluded the Plaintiff met the disability requirements for Steps 1 and 2 of this analysis, but the ALJ concluded the Plaintiff was unable to meet the disability requirements for Steps 3 and 4.  (Tr. 14-17).  The Plaintiff argues that the ALJ erred in the following: (A) its determination that the Plaintiff did not qualify under the cardiovascular listing, (B) its determination that the Plaintiff's statements concerning intensity, duration, and limiting effects of his symptoms were not entirely credible, (C) its assessment of the Plaintiff's RFC, and (D) its reliance on the VE's response to its hypothetical questions.  *Id.*

**A. The ALJ's Cardiovascular Listing Determination**

In the present action, the Plaintiff argues that he "probably meets or equals a cardiovascular listing . . . [because he] had a 60-80% stenosis of the left carotid artery."  (Dkt. No. 9-1, Page 11). In his appeal brief, the Defendant did not to address this issue and did not reference this diagnosis. (Dkt. No. 7, Page 6).

A threshold requirement for meeting a cardiovascular listing is that there should be at least three (3) months of medical evidence supporting the Plaintiff's claim that he meets this listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007) (4.0(b)(1) Cardiovascular System) (stating that "a longitudinal clinical record covering a period of not less than 3 months of observations and therapy is usually necessary for the assessment of severity and expected duration of cardiovascular impairment, unless the claim can be decided favorably on the basis of current evidence."). The only evidence the Plaintiff uses to support his claim that he has met the cardiovascular listing is the medical report from Dr. Baggett dated June 30, 2004.[3] (Dkt. No. 9-1, Page 11). This medical evidence is insufficient to establish that the Plaintiff meets the cardiovascular listing, and the Plaintiff failed to meet his burden at Step 3. *See Cox*, 160 F.3d at 206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Accordingly, the ALJ did not error in its determination that the Plaintiff did not meet the listing for a cardiovascular impairment under Step 3.

**B. The ALJ's Credibility Determination**

The Plaintiff claims that the "ALJ committed reversible error when he found that although Burns' *(sic)* medically determinable impariment[s] could be reasonably expected to produce that *(sic)* alleged symptoms, and *(sic)* Burns' *(sic)* statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible." (Dkt. No. 9-1, Page 10). The Defendant, however, argues that "resolving credibility issues is a matter that is properly within the purview of the ALJ" and that substantial evidence supports the ALJ's credibility determination. (Dkt. No. 7, Page 8).

In assessing the credibility of a claimant, the ALJ is required to examine and apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). The five *Polaski* factors, which

---

[3] The medical records from June 21-23, 2004 also indicate that the Plaintiff suffered from carotid stenosis, but this medical evidence is still not sufficient to meet the three-month requirement. (Tr. 185-231).

6

must be analyzed in light of the claimant's subjective complaints of pain and discomfort, are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *Id.* at 1322. The ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ acknowledges and examines those factors before discounting the subjective complaints of the claimant. *See Lowe v. Apfel,* 226 F.3d 969, 371-72 (8th Cir. 2000).

In the present action, the ALJ considered the *Polaski* factors. (Tr. 15-16). Based upon these factors, the ALJ determined that the Plaintiff's statements concerning the intensity, duration, and limiting effects of the Plaintiff's claimed symptoms were not entirely credible. (Tr. 15-16). The ALJ based its credibility determination on the following: (1) there was an absence of any objective medical findings to support the Plaintiff's allegations of disabling pain; (2) the Plaintiff's claimed pain from seizure disorders actually resulted from alcoholism and withdrawal; (3) the Plaintiff never sought treatment for his claimed chronic back and left shoulder pain; and (4) the record indicates that the Plaintiff's activities of daily living had not significantly changed since the alleged onset date. (Tr. 16).

This Court is required to accept the credibility determination of the ALJ if that determination is supported by substantial evidence even if the ALJ does not discuss every *Polaski* factor in detail and even if the ALJ has an "arguable deficiency in opinion-writing technique." *Strongson,* 361 F.3d at 1072 (citing *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir. 1987)). In this case, the ALJ determined that the Plaintiff's complaints were not credible. (Tr. 15-16). Even though the ALJ did not list every *Polaski* factor and did not detail all of the evidence

7

supporting each of these factors, the ALJ's finding was based upon his analysis of several of the factors.  (Tr. 16).  Because the ALJ gave several valid reasons for finding that the Plaintiff's testimony was not entirely credible, the ALJ's credibility determination is entitled to deference. *See Woodruff v. Astrue,* No. 06-1818, 2007 WL 913854, at *1 (8th Cir. March 28, 2007);  *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006).

**C. The ALJ's RFC Determination**

The Plaintiff claims that the ALJ's RFC determination was not "based on all relevant evidence that addressed the claimant's ability to function in the workplace."  (Dkt. No. 9-1, Page 6).  The Defendant argues that the ALJ considered all of the medical evidence prior to making his decision and that the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 7, Pages 3-4).

Prior to Step 4 of the sequential analysis, the ALJ is required to determine the claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)).  The Plaintiff has the burden of producing documents to support his or her claimed RFC.  *See Cox*, 160 F.3d at1206;  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Once the Plaintiff meets that burden, the ALJ bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the

8

claimant's "ability to function in the workplace" that supports its RFC determination.  *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001).  Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

As an initial matter, the relevant time period for the Plaintiff's DIB application began on August 21, 2002, when the Plaintiff contends he became disabled, and ended on the date of the ALJ's decision or March 3, 2006; and the relevant time period for the SSI application began on June 26, 2004, when the SSI application was filed, and ended on the date of the ALJ's decision or March 3, 2006.  *See Pyland v. Apfel,* 149 F.3d 873, 876-77 (8th Cir. 1998);  *Cruse v. Bowen,* 867 F.2d 1183, 1185 (8th Cir. 1989).  The medical records from the relevant time period range from September 17, 2003 to October 5, 2005.[4]  (Tr. 181-231, 281-321).

On September 17, 2003, the Plaintiff was treated for chest pain.  (Tr. 181-183).  The treating physician, Dr. Montgomery, determined that the Plaintiff's chest pain was likely attributable to a tender muscle nodule in the left scapula, and the Plaintiff was prescribed a muscle relaxant.  (Tr. 13, 181-184).  On September 25, 2003, the Plaintiff underwent tests for his chest pain, and Dr. Montgomery diagnosed the Plaintiff with poor exercise tolerance.  (Tr. 13, 180-181).  On that date, Dr. Montgomery also noted that the Plaintiff tested negative for ischemia by EKG criteria, did not suffer from exercise-induced chest pain and exercise-induced arrhythmia, had a low probability for coronary artery disease, and had a ejection fraction of 66% with no wall motion.  *Id.*

---

[4] A number of other medical records included in this transcript pre-date the relevant time period for the purposes of these DIB and SSI applications.  (Tr. 153-180, 232-280).  *See Pyland,* 149 F.3d  at 876-77; *Cruse,* 867 F.2d at 1185.

From June 21, 2004 to June 23, 2004, the Plaintiff was admitted to the Northwest Medical Center of Washington County for dizzy spells and diplopia, and Dr. Allan Martin diagnosed the Plaintiff with an anterior thalamic infarct, left-sided carotid stenosis, and dizziness. (Tr. 185-231). Dr. Martin also noted that, as of the date of the Plaintiff's admission, the Plaintiff had been smoking one pack of cigarettes for the past 40 years and continues to smoke. (Tr. 213). Dr. Martin also noted that the Plaintiff was also a heavy drinker but had quit two years ago. *Id.* On June 30, 2004, Dr. Baggett examined the Plaintiff at the Northwest Family Medical Center during a follow-up office visit, and Dr. Baggett determined that the Plaintiff no longer had double-vision or diplopia but that the Plaintiff was still weak and experienced dizziness. (Tr. 281-283). Dr. Baggett also determined that the Plaintiff's anterior thalamic infarct was stable and that the Plaintiff had 60-80% stenosis of the carotid artery. (Tr. 282).

On December 6, 2004, Dr. Brown examined Plaintiff during a follow-up visit and noted that the Plaintiff had improved and that the Plaintiff was, as of that date, only experiencing vague concentration problems. (Tr. 285). Dr. Brown noted that the Plaintiff had experienced no balance problems and no associated pain. *Id.* On February 23, 2005, Dr Brown examined the Plaintiff during a second follow-up visit and determined the Plaintiff was doing well and the Plaintiff suffered from no residual symptoms. (Tr. 286). On September 13, 2005 and on October 5, 2005, the Plaintiff was admitted to the emergency room in the Northwest Medical Center of Washington County with symptoms of hematuria or blood in the urine and chest pain. (Tr. 14, 294-321). The Plaintiff was treated for symptoms consistent with a urinary tract infection. *Id.*

Based upon the Plaintiff's medical evidence, the ALJ determined the Plaintiff's RFC. (Tr. 14). The ALJ determined that the Plaintiff can perform a "wide range of medium exertion level

activities.  More specifically, he can lift and carry 25 pounds frequently and 50 pounds occasionally; push/pull 25 pounds frequently and 50 pounds occasionally; stand/walk/sit for 6 hours out of an 8-hour workday; and frequently stoop, squat, crouch, crawl, and climb stairs.  He is right-hand dominant and can occasionally work above the shoulder level with his left upper extremity and no limitations of the right upper extremity."  (Tr. 14).

The ALJ's RFC determination was not in error.  The Plaintiff has not directed this Court to any type of work restriction in his medical records, and the medical records do not indicate that the Plaintiff has any type of work restriction.  (Tr. 153-180, 232-280).  (Dkt. No. 9-1, Pages 7-8).  *See Walker v. Barnhart,* No. 02-2009, 2002 WL 31545926, at *1 (8th Cir. 2002) (noting that the ALJ did not error in its RFC determination because none of the claimant's doctors had given him any restrictions during the relevant time period).  While it is clear that the Plaintiff has suffered from several health problems, no doctor has noted, and none of the medical evidence indicates, that the Plaintiff is limited in his ability to work.  It is the Plaintiff's burden to bring forth evidence establishing his work limitations.  *See Cox,* 160 F.3d at 1206.  Since the Plaintiff has not met his burden, this Court finds no error in the ALJ's RFC determination.

**D. The ALJ's Hypothetical to the VE**

The Plaintiff also claims that the ALJ erred in relying on the VE's responses to the ALJ's hypotheticals.  (Dkt. No. 9-1, Page 8).  Specifically, the Plaintiff claims the "ALJ committed reversible error when he allowed the testimony of the VE to constitute substantial evidence when the VE found that Burns could return to his past relevant work as a worker in a cleanup crew and grill cook at Sonic."  (Dkt. No. 9-1, Pages 6, 8-10).  The Defendant, however, argues that it is the Plaintiff's burden to prove that he is unable to perform his PRW, and the Plaintiff failed to meet

11

his burden.  (Dkt. No. 7, Pages 8-9).

This Court finds no error with the ALJ's determination that the Plaintiff can perform his PRW.  The ALJ determined the Plaintiff could perform his PRW based upon the ALJ's RFC and credibility determinations which were both supported by substantial evidence.  *See Discussion 3.B, 3.C, supra.*  This Court notes that the determination that the Plaintiff could perform his PRW was made at Step 4 where, unlike at Step 5, the burden is *on the Plaintiff* to establish that he cannot perform his PRW.  *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f) (emphasis added). In the present action, the Plaintiff has not produced sufficient evidence indicating that he cannot perform his PRW and has, therefore, not met his burden at Step 4.  *See Discussion 3.B, 3.C, supra.* In fact, as noted above, the Plaintiff has not produced medical evidence indicating that he has any work restrictions.  *See Walker v. Barnhart,* 2002 WL 31545926, at *1.

Furthermore, the Plaintiff cannot shift his burden at Step 4.  *See Banks v. Massanari,* 258 F.3d 820, 827 (8th Cir. 2001).  The Eighth Circuit has clearly held that a VE's testimony is not even required at Step 4 of the analysis because the claimant, not the Commissioner, bears the burden of proof.  *Id.*  In the present action, the Plaintiff cannot shift his burden to the Commissioner by arguing that the ALJ failed to supply DOT code numbers for the jobs described and that the ALJ failed to note the distinction between jobs the Plaintiff actually had performed and those jobs as defined in DOT.[5]  (Dkt. No. 9-1).

The Plaintiff has not produced sufficient evidence indicating that he cannot perform his

---

[5] The Plaintiff cites Social Security Regulation 82-61 and argues that this regulation *requires* the ALJ to evaluate and to compare the job as the Plaintiff actually performed it with the same job as it is performed within the national economy.  (Dkt. No. 9-1, Page 9).  The Plaintiff has misstated this regulation.  A claimant is "not disabled" if he or she retains the RFC to perform: "(1) the actual functional demands and job duties of a particular past relevant job; *or* (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy."  *Id.*  (emphasis added).

PRW, and, accordingly, the Plaintiff has failed to meet his burden in this case. *See Discussion 3.B, 3.C, supra.* Since the Plaintiff did not meet his burden at Step 4, the ALJ's determination should be affirmed.

**4. Recommendation:**

It is the Plaintiff's burden to establish that he is disabled. *See Cox v. Apfel*, 160 F.3d at 1206. This Court has reviewed all of the relevant medical records and briefing in the case, and the Plaintiff has not met his burden. Accordingly, after a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ. Accordingly, I recommend that the Commissioner's decision be affirmed, and the Plaintiff's complaint dismissed with prejudice.

**Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the court except on grounds of plain error or manifest injustice.**

**ENTERED** this **16th day of April, 2007.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

13